UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARY ANN VAZQUEZ,<br>        Plaintiff,<br><br>        v.<br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>        Defendant. | )<br>)<br>)<br>)   CAUSE NO.: 1:12-CV-192-JEM<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Mary Ann Vazquez on June 13, 2012, and an Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 18], filed by Plaintiff on December 31, 2012. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On April 8, 2013, the Commissioner filed a response, and on June 17, 2013, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On January 20, 2009, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on December 30, 2007. Plaintiff's application was denied initially and upon reconsideration. On August 5, 2010, Administrative Law Judge ("ALJ") John S. Pope held a hearing at which Plaintiff, with counsel, and a vocational expert ("VE") testified. On December 3, 2010, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since her alleged onset date of December 30, 2007 (20 CFR 404.1571 *et seq*.).

3. The claimant had the following severe impairments: fibromyalgia, obesity, bipolar disorder, and personality disorder (20 CFR 404.1250(c)).

4. The claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she was limited to unskilled work. She can never climb ladders, ropes, or scaffolds or crawl. She can only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, and must avoid concentrated exposure to wetness and hazards.

6. The claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was 27 years old, defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, from December 30, 2007, the alleged onset date, through the date of the decision (20 CFR 404.1520(g)).

On April 10, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

**A.   Background**

Plaintiff was 27 years old on the date of her alleged disability onset. She had a high school education and had completed some college courses. She had past work as a sales clerk, machine operator, and masker.

**B.   Mental Health Evidence[1]**

Plaintiff has a history of mental health illness and hospitalizations for depression, anxiety, and suicidal ideation. By June 2008, and through the time period covered by the record, Plaintiff received mental health treatment at the Northeastern Center, including medication management and individual therapy. Plaintiff also received treatment from family doctors at DeKalb Medical Services for her mental health. She was diagnosed at various times throughout her treatment with bipolar disorder type II, borderline personality disorder, anxiety disorder, NOS, and major depressive disorder, and was on a large number of medications in attempts to treat her mental health

---

[1] Because Plaintiff does not challenged the ALJ's findings as to her physical limitations, those are not addressed herein.

disorders. On March 11, 2009, Plaintiff was examined by state agency psychologist Dr. Robert J. Walsh. He diagnosed her with bipolar disorder and anxiety disorder.

On April 23, 2009, non-examining state agency psychologist Dr. Kenneth Neville completed a Psychiatric Review Technique Form. He concluded that she had bipolar disorder and anxiety disorder, and experienced moderate limitation in maintaining concentration, persistence, or pace, but only mild restrictions in daily living and social functioning. Dr. Neville also completed a Mental Residual Functional Capacity Assessment, finding a number of moderate limitations in her job-related mental abilities and concluding that Plaintiff's impairments were severe but that she was capable of functioning in a competitive setting.

On October 7, 2009, Plaintiff saw Dr. Bret Kueber, a family doctor, for follow up treatment of major depressive disorder. She stated that her new medication was working well and the doctor noted that Plaintiff's major depressive order was "in Part/Unspec Remission."

Plaintiff began seeing psychologist Dr. Susan Dwyer in February, 2009. Plaintiff met with Dr. Dwyer for weekly one hour sessions through at least the time of the Administrative Hearing. On August 12, 2010, Dr. Dwyer completed a Mental Residual Functional Capacity Questionnaire. It indicated that Plaintiff had intervals of improved functioning followed by longer periods of relapse and gave her a fair-to-poor prognosis. Dr. Dwyer opined that Plaintiff would be very limited in several areas of abilities and aptitudes needed to do unskilled work because of her stress intolerance, interpersonal sensitivity, chronic pain, and depression. She anticipated that Plaintiff would be absent from work more than four days a month because of her treatment or impairments.

C.   **Vocational Expert Testimony**

At the Administrative Hearing, Tony McFarland testified as a neutral vocational expert. The ALJ presented a series of hypothetical questions and directed the VE to disregard any information other than the hypotheticals. In response to the hypothetical that reflected Plaintiff's RFC, the VE testified that there was work available to a person with those limitations in the regional economy, but that if all of Plaintiff's claimed impairments were found to be credible, her need to lay down frequently would preclude work. The VE testified that an employee in an unskilled job would need to stay on task at least 80 to 85 percent of an eight hour day and could not miss more than one day of work per month.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is

denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ made two main errors in his opinion: (1) the ALJ improperly evaluated the opinion of Plaintiff's treating psychologist and (2) the ALJ failed to incorporate his finding of a moderate degree of limitation in concentration, persistence or pace in his hypothetical.

**A.  Weight to Treating Psychologist**

Plaintiff argues that the ALJ improperly evaluated the opinion of her treating psychologist, who testified that Plaintiff would miss more than four days of work per month due to her mental impairments or treatment. The Commissioner argues that the ALJ reasonably weighed the medical opinions in the record.

When a treating source's opinion is well-supported by objective medical findings and not inconsistent with other evidence, it is entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2). Generally, a treating source's opinion is given more weight than a non-treating source's opinion.

*Id.* In deciding how much weight to give a doctor's opinion, the factors an ALJ considers are: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). If "an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)) (other citations omitted).

Plaintiff challenges the three reasons the ALJ gave for discounting the opinion of Plaintiff's treating psychotherapist, Dr. Dwyer: (1) Plaintiff's ability to attend appointments, adhere to a treatment regimen, and take online courses is inconsistent with Dr. Dwyer's opinion on absenteeism; (2) other treatment records indicate improvement with medication; and (3) the ultimate issue of disability is reserved to the Commissioner. The Commissioner argues that the ALJ reasonably weighed the medical opinions in the record because Dr. Dwyer's opinion was not supported by the record.

The ALJ relied on the opinion of a state agency assessor to conclude that the Plaintiff was capable of competitive work. The ALJ cited to several of Plaintiff's activities as reasons for giving Dr. Dwyer's opinion little weight, including her ability to attend weekly therapy appointments, adhere to treatment, and complete an online course. Plaintiff argues that the ALJ has not built a logical bridge between her activities and his conclusion that she would be able to work full time.

9

Although the ALJ noted Plaintiff's ability to take online courses, he did not explain how the ability to take a class in one's own home, at one's own pace, stopping and starting at will, translates to the ability to attend a workplace on time every day and stay on task throughout the workday, particularly when the record contains evidence of repeated problems with absences and inability to complete even a one day per week practicum in a veterinary office. Nor did the ALJ explain how Plaintiff's ability to attend hour-long weekly counseling sessions or to take her medication (and the Court notes that there is evidence in the record that Plaintiff did not always take her medication as prescribed) is equivalent to the ability to work a full time job.

Although medical evidence, including that from a treating physician, "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. In this case, the ALJ failed to explain how Plaintiff's few activities demonstrate an ability to maintain full time employment, and the link is certainly not so obvious as to justify ignoring the opinion of a treating psychologist. *See, e.g., Michaels v. Apfel*, No. 98-1404, 1998 WL 767142, at *3 (7th Cir. May 24, 1995) ("conclud[ing] that the ALJ's reasoning does not support his conclusion" where the ALJ's use of a plaintiff's daily activities to justify his decision not to give weight to a treating physician was based on "illogical reasoning").

Plaintiff also argues that it was improper for the ALJ to use a single, isolated statement from a family doctor to conclude that "the treatment records . . . clearly indicate improvement with medication." AR 27. Dr. Kueber only saw Plaintiff a few times and did not give any opinion on how Plaintiff's mental health might affect her ability to do work. The Seventh Circuit has warned

10

against "cherry-picking" medical evidence, particularly because "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio*, 630 F.3d at 710. In that case, the Seventh Circuit said that "[t]he ALJ ought to have analyzed whether [the treating psychiatrist]'s mental-residual-functional-capacity questionnaire was consistent with her treatment notes as a whole. Even if we accept the [single] treatment note as evidence that [the plaintiff] enjoys a few 'good days,' that evidence still offers no support for the ALJ's finding that her mental illness does not prevent her from holding a job." *Id*; *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)). In this case, the cherry-picked note was from a physician who did not see Plaintiff frequently, and only stated that her major depressive disorder was "in Part/Unspec remission" and that Plaintiff "was started on Seraquel [medication] and [she] states it is working well." AR 461. The single note, which does not address Plaintiff's capacity for work, is not a sufficient basis for the ALJ's conclusion that Plaintiff would be able to maintain a regular work schedule, nor it cannot form the basis for wholesale disregard of the treating psychotherapist's opinion.

The ALJ also discounted Dr. Dwyer's opinion because "the ultimate issue of disability is a medical-vocational determination reserved for the Commissioner of Social Security and not for the claimant's psychotherapist." AR 27. While a correct statement of the law, the ALJ neglected another part of the ruling he cites in support of his reasoning: that an ALJ may not simply ignore such an opinion, but must "evaluate all the evidence in the case record to determine the extent to

11

which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, 5 (July 2, 1996); *see also Hamilton v. Colvin*, No. 12-3085, 2013 WL 1855725, at *6 (7th Cir. May 3, 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 (explaining that ALJ must not ignore treating physician's opinion that plaintiff "could not handle a full-time job").

Although the ALJ did not necessarily need to give controlling weight to Dr. Dwyer, his explanation for rejecting her opinion are unsound and therefore this matter must be remanded. *Punzio*, 630 F.3d at 710. In addition to the reasons described above, Dr. Dwyer, a mental health specialist, examined Plaintiff, treated Plaintiff weekly over a long period of time, and gained significant knowledge of Plaintiff's mental impairments, factors that indicate that her opinion should have received significant weight. 20 CFR 404.1527(c); *see also Roddy*, 705 F.3d at 637. Instead, the ALJ gave controlling weight to the opinion of a non-examining state agency doctor whose opinion was completed almost sixteen months before Dr. Dwyer's, making it both less recent and based on a less-complete record.

On remand, the ALJ is directed to thoroughly "evaluate all the evidence in the case record to determine the extent to which the [treating psychologist's] opinion is supported by the record," S.S.R. 96-5p, 1996 WL 374183, at *3, 5 (July 2, 1996), paying close attention to the factors in 20 C.F.R. § 404.1527(c). If the ALJ again determines that the treating doctor's opinion is not entitled to controlling weight, he must give a sound explanation for his rejection. *Punzio*, 630 F.3d at 710.

**B.     Limitations in Concentration, Persistence, and Pace**

Plaintiff argues that the ALJ's hypothetical question to the VE did not adequately reflect the Plaintiff's moderate limitations in concentration, persistence, and pace as found by the ALJ. The Commissioner contends that the hypothetical question to the VE tracked the ALJ's RFC.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

In this case, the ALJ gave great weight to the opinions of state agency assessors Dr. Neville, who addressed Plaintiff's mental limitations, and Dr. Cocoran, who addressed Plaintiff's physical limitations, when determining Plaintiff's RFC. Dr. Neville concluded that Plaintiff was able to function in a competitive setting, and Dr. Corcoran merely restricted Plaintiff to sedentary work. The ALJ further restricted Plaintiff to unskilled work, a greater limitation than found by either of the state agency assessors, to "limit[] her exposure to debilitating stress." AR 27. He did not include any reference to limiting Plaintiff's stress or to the specific terminology "concentration, persistence, or pace" in the increasingly restrictive hypotheticals posed to the VE, although he did include the limitation to unskilled work.

Where there are limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical posed to the VE, although there is not "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* A limitation to unskilled work is generally insufficient to account for moderate limitations in concentration, persistence, or pace because "[t]he ability to stick with a task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620-21 ("In most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."); *see also Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (concluding that limitations to sedentary and light unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff]'s ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment"); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Craft*, 539 F.3d at 677-78 (limitation to unskilled work did not account for limitations in concentration, pace, and mood swings); *Young*, 362 F.3d at 1004 (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account the claimant's limitations); *see*

*also* SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

In this case, not only does the Court question the weight given the treating physician, and thus the conclusion in the RFC, but the hypothetical to the VE did not even encompass all of the limitations found by the ALJ. Limiting Plaintiff to unskilled work did not "limit[] her exposure to debilitating stress," let alone address her moderate limitations in concentration, persistence and pace. On remand, the ALJ is directed to "include all of [Plaintiff's limitations] directly in the hypothetical," as that is "the most effective way to ensure that the VE is apprised fully of the claimant's limitations." *See O'Connor-Spinner*, 627 F.3d at 619.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in the Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 18] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 25th day of September, 2013.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record